IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LISA CLARK, et al. | : |
| | : |
| v. | : Civil Action No. DKC 16-0261 |
| | : |
| MUBASHAR A. CHOUDRY, M.D., et al. | : |
| | : |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case is a partial motion to dismiss filed by Plaintiffs/Counter-Defendants Lisa Clark, Heather Donnelly, and Aminda Gailey ("Plaintiffs" or "Counter-Defendants"). (ECF No. 12). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Counter-Defendants' partial motion to dismiss will be granted.

**I. Background[1]**

Plaintiffs sued Defendants/Counter-Claimants Dr. Mubashar Choudry ("Dr. Choudry"), Advanced Vascular Resources, LLC ("AVR"), AVR Management, LLC, and Advanced Vascular Resources of Hagerstown, LLC (collectively "Defendants" or "Counter-Claimants") alleging, *inter alia*, discrimination based on sex

---

[1] Unless otherwise noted, the facts outlined here are alleged in the counterclaim and construed in the light most favorable to Defendants/Counter-Claimants, the nonmoving party.

and retaliatory wrongful discharge. Plaintiffs' complaint arises from alleged sexual harassment by Dr. Choudry while Plaintiffs were employed by AVR. (ECF No. 1).

Dr. Choudry formed AVR with his brother, Javed Choudry ("Mr. Choudry"), and his former business partner, Barbara O'Dare.[2] (ECF No. 10 ¶ 11). Defendants employed Ms. Clark as a paralegal from March 2013 through December 2014, Ms. Gailey as a receptionist from October 2013 through December 2014, and Ms. Donnelly as a marketing and promotion employee from March to December 2014. Defendants allege financial troubles required termination of approximately forty employees, including Plaintiffs, in or around December 2014. (*Id.* ¶¶ 19, 21). Defendants concede that each plaintiff reported Dr. Choudry's sexual harassment before AVR terminated their employment, but Defendants deny that any sexual harassment occurred and allege that AVR decided to terminate Plaintiffs' employment before learning of the sexual harassment allegations. (*Id.* ¶ 40).

Defendants' counterclaim stems from correspondence Plaintiffs' attorney sent to Dr. Choudry, which stated Plaintiffs' allegations of sexual harassment, made a settlement demand, and threatened to file "administrative charges, civil

---

[2] Ms. O'Dare resigned from the company. According to Defendants, she now operates a company that competes directly with Defendants, and "she was assisted by one or more of the Plaintiffs in this endeavor." (ECF No. 10 ¶ 12).

suits, criminal charges, and claims with the professional licensing boards" if the parties did not reach a settlement. (*Id.* ¶¶ 46-47). The letter allegedly said, "[W]e will pursue all means necessary to ensure that Dr. Choudry is not only barred from practicing medicine, but that he will be behind bars." (*Id.* ¶ 47). According to Defendants,

> After their termination, Plaintiffs and their attorneys began a campaign to enlist current and former employees of AVR in their scheme. They did this by constantly contacting former and current employees of AVR by phone. During these conversations, and in voice mail messages, Plaintiffs told the employees about Dr. Choudry's alleged sexual harassment of them and encouraged them to contact [Plaintiff's attorney]. Plaintiffs stated it would be 'financially worthwhile' to join their lawsuit. Plaintiffs also told employees that if they join the lawsuit they [could] make money.

(*Id.* ¶ 48). Defendants allege that Plaintiffs and their attorney contacted employees at their AVR office during work hours, which was "disruptive."

Plaintiffs pursued criminal and administrative means to report Dr. Choudry's alleged sexual harassment. Ms. Donnelly first filed a police report in Texas. (*Id.* ¶¶ 52-53).[3] Plaintiffs then filed complaints of sexual harassment with the

---

[3] Defendants state that law enforcement contacted Dr. Choudry about this report of sexual harassment, and he denied the allegation. (*Id.* ¶ 55). Defendants do not, however, indicate the resolution of that case.

Maryland Board of Physicians and the District of Colombia Medical Licensing Board. (*Id.* ¶ 55).[4]

Plaintiffs subsequently commenced this civil action, filing a forty-five count complaint against Defendants. (ECF No. 1). In their complaint, Plaintiffs allege: discrimination based on sex under Title VII of the Civil Rights Act, the Maryland Human Rights Act, and the Montgomery County Code; wrongful discharge; battery; tortious interference with a contractual relationship; tortious interference with an economic relationship; civil conspiracy; aiding and abetting; intentional misrepresentation, concealment, or nondisclosure; negligent hiring, retention, and supervision; intentional infliction of emotional distress; false imprisonment; and violations of the Maryland Wage Payment and Collection Act.

Defendants filed an answer (ECF No. 9) and a five-count counterclaim against Plaintiffs alleging: civil conspiracy; defamation; abuse of process; tortious interference with an economic relationship; and extortion (ECF No. 10). Defendants aver that Plaintiffs commenced this action as "the culmination of their lengthy and futile efforts to extract a large cash settlement from Dr. Choudry and AVR." (*Id.* ¶ 9). Defendants further allege:

---

[4] Defendants allege that both complaints were dismissed "without even holding a hearing." (*Id.* ¶ 55).

> Plaintiffs schemed together and with others to extort monies from Dr. Choudry and AVR. Plaintiffs did this by making false accusations of sexual harassment against Dr. Choudry. In furtherance of their scheme, the Plaintiffs and agents made false statements to current and former employees of AVR, to law enforcement, and the medical licensing boards. Those efforts failed and Plaintiffs now seek to use this case to obtain monies to which they are not entitled.

(*Id.*).

Plaintiffs filed an answer and contemporaneously filed a partial motion to dismiss Count III (abuse of process) and Count V (extortion) of the counterclaim. (ECF Nos. 11; 12). Defendants have not responded to the motion, and the time to do so has passed.

## II.  Standard of Review

Because Plaintiffs filed an answer to Defendants' counterclaim at the same time as their pending motion, styled as a partial motion to dismiss, the court will construe Plaintiffs' motion as a partial motion for judgment on the pleadings. *See* Fed.R.Civ.P. 12(c); *Ross v. Prince George's Cty., Md.*, No. DKC 11-1984, 2012 WL 1204087, at *2 (D.Md. Apr. 10, 2012); *Nielsen Co. (US), LLC v. comScore, Inc.*, 819 F.Supp.2d 589, 591 n.2 (E.D.Va. Aug. 19, 2011) ("When a party files a Rule 12(b)(6) motion to dismiss contemporaneously with or after its answer to a complaint or counterclaim, the motion . . . is properly

construed as a motion for judgment on the pleadings pursuant to Rule 12(c).").  The United States Court of Appeals for the Fourth Circuit has held that a motion for judgment on the pleadings, in circumstances such as those presented here, is governed by the same standard of review as a motion to dismiss for failure to state a claim:

> Because [the defendant's] answer had been filed, the pleadings were closed at the time of the motion.  Thus, we construe the motion as one for judgment on the pleadings. However, the distinction is one without a difference, as we review the district court's decision to grant judgment on the pleadings *de novo*, applying the same standard for Rule 12(c) motions as for motions made pursuant to Rule 12(b)(6). *Edwards v. City of Goldboro*, 178 F.3d 231, 243 (4th Cir. 1999); *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 405 (4th Cir. 1998).

*Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002).

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint.  *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006).  A counterclaim need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Bell Atl. Corp. v.*

6

*Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

At this stage, all well-pleaded allegations in a counterclaim must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the counter-claimant. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011). In evaluating the counterclaim, the court need not accept unsupported legal allegations. *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

**III. Analysis**

  **A. Abuse of Process (Count III)**

Defendants allege that Plaintiffs are liable for abuse of process, a Maryland common law tort, because they filed the current action and "willfully used the process for the illegal

7

and/or improper purpose of obtaining a large cash settlement and monies from AVR and Dr. Choudry." (ECF No. 10 ¶ 70). According to Defendants, Plaintiffs initiated process "with actual malice as they know their allegations are not supported by facts and are fabrications." (*Id.* ¶ 71). Defendants appear to conflate the elements of abuse of process with malicious use of process, but they fail to state a claim for either under Maryland law.

Insofar as Defendants allege Plaintiffs acted with "actual malice" and without factual support for the allegations of their complaint (ECF No. 10 ¶ 71), their counterclaim sounds as one for malicious use of process, rather than abuse of process. *See Metro Media Entm't v. Steinruck*, 912 F.Supp.2d 344, 351 (D.Md. 2010). "Malicious use of process . . . is the initiation or continuation 'of a civil proceeding against another with malice and without probable cause' that causes damage to and ends in favor of the other party." *State v. Rendelman*, 404 Md. 500, 517 fn.9 (2008) (citing *One Thousand Fleet Ltd. P'ship v. Guerriero*, 346 Md. 29, 34 (1997)). To sustain a cause of action for malicious use of process, Defendants would need to show: (1) Plaintiffs instituted a prior civil proceeding; (2) Plaintiffs instituted the proceeding without cause (*i.e.*, "a reasonable ground for belief in the existence of such state of facts as would warrant institution of the suit or proceeding complained of"); (3) Plaintiffs instituted the proceeding with malice

8

(*i.e.*, "the party instituting proceedings was actuated by an improper motive"); (4) the proceedings terminated in favor of Defendants; and (5) a "special injury" resulted that "would not necessarily result in all suits prosecuted to recover for a like cause of action." *One Thousand Fleet*, 346 Md. at 37. Defendants cannot satisfy these elements, *inter alia*, because proceedings have not terminated, let alone terminated in favor of Defendants, and Defendants allege no "special injury." Accordingly, even if pleaded, a malicious use of process claim could not survive Plaintiffs' motion.

For Defendants to state a claim for abuse of process, they must set forth facts alleging:

> [F]irst, that [Plaintiffs] willfully used process after it has issued in a manner not contemplated by law, *Keys* [*v. Chrysler Credit Corp.*, 303 Md. 397, 411 (1985)]; second, that [Plaintiffs] acted to satisfy an ulterior motive; and third, that damages resulted from [Plaintiffs'] perverted use of process, *Berman* [*v. Karvounis*, 308 Md. 259, 262 (1987)].

*One Thousand Fleet*, 346 Md. at 38.

Defendants base their abuse of process claim on the fact that Plaintiffs sought a monetary settlement from Dr. Choudry and AVR before commencing this action. Defendants maintain Plaintiffs pursued sexual harassment actions against Dr. Choudry purely for personal financial gain. Although the abuse of

9

process tort contemplates a party's ulterior motives in its second element:

> A bad motive alone is not sufficient to establish an abuse of process. "Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process is required . . . ." [W. Keeton, *Prosser & Keeton on the Law of Torts* § 121, at 898 (5th ed. 1984)]; *see also Berman*, 308 Md. at 265; *Bartlett v. Christhilf*, 69 Md. 219, 230-31 (1888); *Wells v. Orthwein*, 670 S.W.2d 529, 533 (Mo.Ct.App. 1984) ("[N]o liability is incurred where the defendant has done nothing more than pursue the lawsuit to its authorized conclusion regardless of how evil his motive may be.").

*Id.* Maryland law considers an improper "act or threat" to generally "take[] the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or club." *Wood v. Palmer Ford, Inc.*, 47 Md.App. 692, 706-07 (1981) (quoting Keeton, *supra*, § 121, at 857). Such an act or threat would satisfy the first element of abuse of process, which requires that process be used in a manner not contemplated by law.

Although Defendants argue that the demand letters sent by Plaintiffs' attorney constitute this manner of improper threat, the letters are no different from those routinely sent to potential defendants prior to the filing of lawsuits in court. *See Metro Media Entm't*, 912 F.Supp.2d at 352 ("[T]here is

10

nothing wrong with presenting a defendant with a settlement offer prior to proceeding with litigation, and the fact that Plaintiff may have had an ulterior motive is inconsequential in the abuse of process analysis."). "Courts look with favor upon the compromise or settlement of lawsuits in the interest of efficient and economic administration of justice and the lessening of friction and acrimony." *Welsh v. Gerber Prods., Inc.*, 315 Md. 510, 524 (1989). Plaintiffs' attempt to settle the present action before litigation constitutes neither a threat nor a use of process not contemplated by law.

Moreover, Defendants fail to allege facts sufficient to establish the third element of the cause of action, specifically that "an arrest of the person or a seizure of property of [Defendants] resulted from the abuse of process." *One Thousand Fleet*, 346 Md. at 45 (citing *Bartlett*, 69 Md. at 231); *see also Innocent v. Bank of New York Mellon*, No. PWG-15-951, 2016 WL 386222, at *7 (D.Md. Feb. 2, 2016) ("[T]he injuries contemplated by this particular tort (and an indispensable element of it) are limited to an improper arrest of the person or to an improper seizure of property."). Accordingly, Defendants fail to state a claim for abuse of process, and Count III of the counterclaim will be dismissed.

**B. Extortion (Count V)**

Defendants also allege that Plaintiffs' "unlawful attempts to extort money from Dr. Choudry[,]" through threats of economic injury and criminal prosecution, amount to extortion. (ECF No. 10 ¶¶ 79-83). Defendants again take issue with the demand letters requesting settlement in lieu of Plaintiffs pursuing criminal charges and reporting Mr. Choudry's behavior to the medical licensing boards. Plaintiffs counter that Maryland law does not provide a civil cause of action for extortion.

Extortion is a crime under Maryland's criminal law, *see* Md. Code Ann., Crim. Law, §§ 3-701 *et seq.*, but it is well established that there is no corresponding civil cause of action. *Gorby v. Weiner*, No. TDC-13-3276, 2014 WL 4825962, at *12 (D.Md. Sept. 23, 2014); *Yang v. Lee*, 163 F.Supp.2d 554, 563 (D.Md. 2001), *aff'd*, 32 F.App'x 112 (4th Cir. 2002).

Allegations of extortion are only relevant in civil litigation in cases that arise under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Defendants do not bring their claims pursuant to RICO's civil cause of action, nor would they succeed if they tried to do so.[5] Judges in this district

---

[5] RICO provides a civil cause of action to "[a]ny person injured in his business or property by reason of a violation" of the Act's substantive restrictions. 18 U.S.C. § 1964(c). A RICO claim requires a showing of racketeering activity, broadly defined to include the commission of several federal statutory and state common law offenses, known as "predicate acts."

have held that RICO "is not a cause of action to be pled lightly." *Kimberlin*, 2015 WL 1242763, at *2; *Biggs v. Eaglewood Mortgage, LLC*, 582 F.Supp.2d 707, 714 (D.Md. 2008), *aff'd*, 353 F.App'x 864 (4th Cir. 2009).  Accordingly, because no civil cause of action for extortion exists under Maryland law and because Defendants fail to state a civil RICO claim, Count V of Defendants' counterclaim will be dismissed.

## IV. Conclusion

For the foregoing reasons, the motion filed by Plaintiffs/Counter-Defendants will be granted.  A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge

---

*Kimberlin v. National Bloggers Club*, No. GJH-13-3059, 2015 WL 1242763, at *8 (D.Md. Mar. 17, 2015).  Extortion is a predicate act and is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence or fear or under color of official right."  18 U.S.C. § 1951(b)(2).  Merely filing a lawsuit and demanding a settlement agreement, regardless of how baseless the lawsuit or settlement demand may be, does not qualify as extortion.  *Kimberlin*, 2015 WL 1242763, at *8 (examining numerous circuit court decisions that have held the threat of litigation, even if groundless or inducing genuine fear, cannot constitute extortion under § 1951).